Judge Brooke.
If, as was contended by the counsel for the appellees, the judgment confessed, in Pittsylvania court, upon the note, which is alleged, in the cross bill, to have been executed by the appellee Sarah Williams, for the purpose of defeating the claim of a bona fide creditor of Joseph Williams, her testator, were the o,niy ground on which the appellant entitled himself to ihe aid of the court of cttancery, he having exhibited no *117 settlement of accounts, or other document for the amount of which the note was given, I should be of opinion the aid of that court ought not to be afforded him; because a court of equity will not assist in carrying into effect compositions, of claims, by executors or other fiduciaries, unless the party praying it will first unfold and disclose the whole circumstances of the case to the court, that it may see there has been no fraud, and that every thing was fair; as is in effect said by Lord Macclesfield, in the case of Pollen v. Huband ;(a) but, as it appears by the bill, answers, and exhibits in the first suit, that the complainant Clay, in right of his wife, ihe only daughter of Joseph Williams, is entitled to a considerable proportion of the large estate of which he died possessed; no administration account of which has been rendered, either in the lifetime of Robert Williams, the second husband of the appellee Sarah Williams, or by her, since his death; I am of opinion the appellant is entitled to an account thereof, unless something appears in the cross suit by which he has forfeited that title. If the deposition of M1,Robert, aided bv some circumstances which do not appear to me very weighty, be considered as outweighing the positive answer of the appellant, and, of consequence, as establishing the allegation in the cross bill, that the note on which the judgment was confessed, was executed by the appellee Sarah Williams, in pursuance of a plan preconcerted by the parties to defeat the claim of Hamilton Co. upon the estate of her testator-Joseph Williams, she then brings herself completely within the rule that in “ pari delicto potior est conditio possidentis” or that the possession must stand for the, right in a controversy between parties equally guilty of a fraud. Nor is there any thing in this case, which can entitle her to the benefit of . the exception to this rule, laid down in the case of Austin v. Winston, in this court. She was in no danger of being oppressed by the appel-. lant i he. had no execution hanging over her; it was her *118 own voluntary act, against which she ought not to be relieved by a court of chancery.
If, however, on the contrary, (as I am inclined to think is the case,) the deposition of M'-Robert, aided as before mentioned, does not outweigh the positive answer of the appellant, corroborated by the circumstance, that the appellee Sarah permitted several years to elapse (during, which the charge of a fraud, practised in obtaining the note by the appellant, might have been exhibited in some one of her answers to his bill) without having even noticed it, and also by the inconsistencies in the cross bill, relative to the counter bond, and the burning of the house of Robert Williams, then the allegations in the cross bill are totally unsupported by proof, and it ought to have been dismissed. But pursuing the rule before stated, relative to compositions by executors ; and it appearing that the appellant has received a part of the estate of Joseph Williams, and that there are outstanding debts to be satisfied; I am of opinion that the appellant, before he has the aid of the court of chancery, ought to give the security required by the chancellor in the cross suit; and that (waiving his judgment until an account shall come in) he then will be entitled to an account (not exceeding his judgment in amount) of the estate of Joseph Williams, deceased, according to the principles of the decree, which has been agreed upon by this court. I am, therefore,'of opinion, thatjboth the decrees bereversed.
' Judge Tucker.
These causes, as between the appellant Clay, and the appellee Sarah Williams, are cross suits. The complexion which the deposition of Theodorick B. M-Robert (the lawyer who was employed to draw the bond, and to obtain the judgment alluded to in the original suit, and complained of in the cross suit) gives to the transaction between those parties, seems to me to afford to neither any claim to the aid of a court of equity., *119 MV opinion in the case of Austin v. Winston (a) to which 1 still adhere, will save me the trouble of repeating my reasons in this case. The opinions of some of the judges delivered on that occasion, in support of the decree which was pronounced, operate, perhaps, in favour of a widow, who states that she was imposed upon by a son-in-law, in whom she had confidence; (though circumstances appear to disprove the latter part of that allegation ;) and the uncertainty of the public mind upon the much agitated question respecting the recovery of British defats, in the federal courts, (which possibly was not then decided,) may afford some apology for both, for wishing to avoid the payment of such a debt, by every lawful means ; but cannot, in my opinion, sanction the plan which that deposition discloses, which (though denied by the answer of the defendant in the cross suit) stands uncontradicted in the original suit. I therefore think the chancellor would have decided rightly in dismissing both suits, if there had been no other object than what relates to that transaction : but as Clay, in right of his wife, appears to be entitled to an account, I am of opinion that, instead <af dismissing the plaintiff’s bill in the original suit altogether, the chancellor ought to have retained it for a settlement and adjustment of the accounts of the estate, of Joseph Williams, deceased, not only with his executrix .Sarah Williams, one of the appellees, but with the other executors of that testator or their representatives, (who aught, for that purpose, to be made parties to the original suit,) and with the representatives of Robert Williams, the second husband of the said Sarah, who acted in her behalf, as executor of Joseph Williams, from the time of his intermarriage with her. And if, upon that settlement, it shall appear that the estate of Robert Williams is, injustice and equity, indebted to that of Joseph Williams, the representatives of the former ought to contribute their several proportions to the payment thereof, *120 •according to the value of the property they may respect* ively have received from his estate, since his death} except so much thereof as may have b. en received by John Cali, in virtue of the decree of the court of Pittsylvania county; liberty being reserved to the plaintiff in the original suit to show, if he can, that such decree was obtained by fraud and collusion between the parties to that suit: and that so much of the decree in the cross-suit as directs the appellant t • give bond to contribute, towards the discharge of the debts of Joseph Williams, and as is not contradicted by the decree which has been agreed on, be affirmed ; and the remainder of both the decrees reversed.
Judge Roane.
This is a bill brought by Clay and wife, against the appellee Mrs. Williams, as executrix of Joseph Williams, her first, and administratrix of Robert Williams, her last husband, and against the children of Robert Williams, who are the distributees of his estate. Though not very fo mally or technically drawn, it prays the aid of the court of equity, to assist them in getting the benefit of a judgment obtained against Mrs. Williams, by confession, in the court of Pittsy.vania county, lor 7,500/.; and, as conducive thereto, prays an account of the administration of Joseph Williams's estate by Mrs. Williams, and by Robert Williams acting in her right ; and of Robert Williams's estate, who is charged with having wasted the estate of Joseph Williams, and whose estate is, consequently, alleged to be responsible therelor; as also a discovery, from the distributees of R. Williams, of the portions of his estate, which have severally come to their hands.
The bill was exhibited on the 10th of September, 1795. On the 26th February, 1796, Mrs. Williams, the principal defendant, answered this bill, but set up no ground of fraud to impeach the judgment on which the bill of Clay is predicated. On the 24th of September, 1798, she *121 exhibited another answer, (without any order or leave of the court for that purpose,) which, like the former, while it is full upon the subject of the administration of the estate of Joseph Williams, is silent upon the subject of fraud. It was not until the 10th September, 1800, five years after the institution of the suit in question, that she set up this ground of defence by a cross bill; thus endeavouring to avail herself of a defence, by the testimony of others, which her conscience was probably too tender to allow her to set up, upon her owu oath as defendant, and which she was possibly urged to set up by the importunities of the other defendants, and by the increasing pressures which were advancing upon her.
In taking this ground of defence, in her cross bill, (which is flatly denied in all its parts, by the answer of the defendant thereto,) she comes with a very ill grace into a court of equity. She comes alleging her own turpitude and fraud, in a case in which she was influenced by no duress or coercion whatever, and in which her colleague in the fraud had her not in his power, further, at least, than his just claims against the estate, of which she was executrix, would extend.
This case is, therefore, widely different, in this respect, from that of Austin v. Winston, in this court; and the appellee now in question stands, on this point, entirely in the situation of a person not to be received or countenanced in a court of equity. While she stands so, upon the general principle, the strength of that principle is greatly increased against her, by the before-mentioned consideration, that she is endeavouring to avail herself -of a defence by the testimony of others, which she did not dare to set up, by her own oath, in the character of „,t defendant.
The sole witness, whom she opposes to the answer of Mr. Clay to the cross bill, is Mr. M'Robert. He was an attorney /confidentially employed, according to his *122 own account, by both the parties, to transact the business between them. He,was an attorney; for although this is not said by him or others in detailing the circumstances of that particular transaction, (no question being asked him upon that point,) yet, very shortly afterwards, he got a judgment upon the bond, as the attorney of the plaintiff, as appears by the x-ecord; but he was at least the scrivener who acted confidentially between the parties, in drawing the bond in question.
The settled law upon this subject is, that counsel or attorneys, so far from being obliged, are not permitted, to give evidence of such matters as come to their knowledge in the way of their profession; that this principle extends even to scriveners acting as attorneys in any particular transaction ; nay, even to interpreters going between the attorney and his client; that this is not the privilege of the counsel, &c. but of the client; without which it would be impossible that any business could be done with safety; that a court will even stop a witness of this class seeming desirous or disposed to reveal confidential communications; and that courts of equity will refer the depositions of such witnesses to a master, to expunge so much thereof as shall be found to be of this character. (Such reference was not necessary in the case before us, as the whole of the testimony contained in the deposition is of that character.) All these positions are to be found in 2 Bac. 579. and the cases there cited : they are bottomed upon the soundest propriety, and go to the utter exclusion of the testimony of Mr. M1,Robert in the case before us. As to any supposed waiver of this objection, on the part of the appellant, it is neither seen that he cross-examined the witness; was present at his examination ; or knew that that particular witness was to be examined ; nor, if it were otherwise, would such waiver be justly inferred therefrom.
In 2 Bac. 579. it is said, that by the practice of the courts, if a witness be produced and sworn by the plainr *123 tiff or defendant, being once sworn, the other may examine him to any thing whatsoever, though he be the solicitor of the party who produces him; but this is with an exception of matters confidentially communicated to him by his client.
Again, this same idea seems to be admitted by the before-mentioned authority, which states that a court will stop a witness of this class being desirous to reveal confidential communications.
This doctrine would seem to hold, á fortiori, in relation to examinations before commissioners, who have not power, as the courts have, to reject a witness who is produced for examination; and, consequently, it behoves the adverse party to make the testimony as little adverse to him as possible, lest his objection to the admissibility of the deposition should fail him, when it comes to be decided on by the proper tribunal. This position seems to have been taken by this court in the case of Blincoe v. Berkeley, 1 Call, 412. There is, on the other hand, no great utility resulting from a party’s objecting to a deposition on a ground which is equally manifested to the court upon the face of the deposition itself. As, therefore, Mrs. Williams can neither be received to allege the fraud herself, which she sets up in this case ; nor her sole witness be admitted to testify thereto, without overturning the best established principles of the law ; the answer of Mr, Clay stands entirely unimpeached in the point in question, and all further inquiry upon this topic is entirely unnecessary. While I say this, I am by no means prepared to admit that that answer would be outweighed by the opposing testimony, were the deposition of Mr. M-Robert not to be excluded. Although there may be some slight circumstances (throwing the conversations of Mrs. Williams out of the question) seeming to support that deposition, there are others, on the ther hand, equally strong to corroborate the answer. These, or most of them, have been stated by the appel *124 lant’s counsel, to whose view of the case I beg leave to have a particular reference.(1) They are not necessary to be repeated and analyzed by me, in the view I have taken of this subject. X go by the well-established principles of law and .equity, and the rules of evidence; (any private surmises, or conjectures of my own, or of others, touching this particular case, to the contrary notwithstanding ;) as being the only safe and proper guides by which a court of justice can be governed. On the ground of the fraud alleged in the cross bill, therefore, the claim of the appellant cannot be affected; especially, as he has stated that the bond was preceded by a settlement of the accounts ; and that in consideration thereof, he dismissed a suit, brought by him, against the appellee Sarah Williams, in a court of equity in North Carolina, by which he had a prospect of recovering as large, or a *125 greater sum, from her, as the executrix of Joseph Wil~ Rams.
But the appellant coming here for the aid of the court, relies upon a composition of a debt by an executrix; and that without showing the particulars on which such composition is founded. I entirely concur with Judge Brooke, that such compositions are not favoured in equity, save when they are beneficial to those for whom the' executors are acting: all compositions of an opposite character are discountenanced in a court of equity; and, in favour of the cesti que trusts, the creditor, having obtained an advantage thereby, will be curtailed and brought down to the proper standard ; especially, where (asín this case) we can get at him, upon the ground of his applying for the aid of the court of equity. He shall not have that aid, unless he will do what is just and right, which is to give up his advantage, (at least so far as it affects those for whom the executor was acting,) and abide by the result of a fair account and settlement. In support of the above ideas, upon this point relative to compositions by executors, I refer, among others, to the cases of Blue v. Marshall,(b) and Pollen v. Huband.(c) The re-cult, as applied to the case before us is, that while the appellant shall never recover more than the amount of his bond with interest, (for he was acting in his own right, and entirely competent to make even an injurious compromise for himself,) he shall be limited in his recovery, on the other hand, by the sum to which, upon an account, he can show himself to be justly entitled. My opinion is, therefore, that the decree in the original suit ought to be reversed, and an account directed of the administration of Sarah Williams, and of Robert Williams, acting in her right, of the estate of Joseph Williams; of Sarah Williams’s administration upon the estate of her husband Robert Williams ; and of the property received by the appellees (children of Robert Williams) from his administratrix ; (excluding the appel *126 lees John and Lucinda Call, the decree in whose favour, in Pittsylvania court is conclusive to show, that there was a marriage contract with Robert Williams, and competent to bind the co-distributees, who claim as volunteers under him ; liberty being at the same time reserved to the appellant to show, if necessary, that their exemption should not prejudice him, who was no party to the decree aforesaid ;) and, upon such account being taken, that the balance thereby found justly due to the appellants from the estate of Joseph Williams, or from the estate of Robert Williams in consequence of his mismanagement of the same, so far as such balance does not exceed the amount of the judgment recovered in Pittsylvania court, as aforesaid, with interest thereupon, shall be decreed to them, to be paid out of the assets of Joseph Williams’s estate, or out of Robert Williams’s estate, so far as he shall be found to have been justly indebted thereto; to which payment, if necessary, the distributees of the said Robert Williams (John and Lucinda Call being excepted as aforesaid) shall be held contributory. As to the decree on the cross bill, I am of opinion that it should be also reversed, so far as it perpetuates the injunction to the judgment aforesaid, and be reformed so as that judgment shall remain enjoined only until the account decreed in the other suit shall be taken, after which, the same shall remain perpetually enjoined for so much thereof as shall exceed the sum found due to the appellants, with legal interest, and be dissolved for the residue. I am therefore of opinion, that both decrees be reversed, with costs, and the cause remanded to the superior court of chancery, to be finally proceeded in according to the principles now stated.
Judge Fleming.
There being no difference of opinion among the judges as..to any points of essential importance, the following is to be entered as the opinion and decree of this court.
“ If the sole object of these suits which, as between *127 the appellant, Matthew Clay, and the appellee, Sarah Williams only, may be considered as cross suits between those parties, had been, on the one hand, to compel a discovery of the assets of Joseph Williams, deceased, in the hands of the appellee Sarah, his executrix, to satisfy the judgment confessed by her on a note given to the ap« peliant for the purpose stated in the deposition of Theodorick B. M‘Robert in the first suit, and charged by the appellee Sarah, in her cross bill, and, on the other, to be wholly relieved from that judgment, as obtained by fraud and imposition, and a collusion between those parties to defeat a just claim against the estate of the said Joseph Williams; this court would have approved of the dismissal of the appellant’s original bill, and would have considered the appellee Sarah as little entitled to the favour of a court of equity, on the grounds mentioned in her cross bill, (although the facts therein alleged had been fully proved,) and would have left both parties in the situation in which they had placed themselves ; but, as it appears to this court that the appellant, in right of his wife, is well entitled to an account and settlement of the estate of the said Joseph Williams, deceased, not only in the hands of the appellee Sarah, his executrix, but in those of the other executors named in the will of the said Joseph, (who, for that purpose, ought to be made parties to the original suit brought by the appellant,) and also in the hands of Robert Williams, the second husband of the said Sarah, (who acted in her behalf, as executor of the said Joseph from the time of his intermarriage with her,)'or his representatives or distributees, the original bill ought not to have been dismissed as to that object, but retained for the purpose of such an account and settlement; in which account, the appellant ought to be charged with such part and proportion of the estate of the said Joseph Williams, as the guardian account settled between the said Robert Williams and the appellant, (by virtue of an order of Pittsylvania county court, made at *128 the instance of the said appellant,) shows to have been accounted for, and delivered to the appellant, in right of his said wife, by the said Robert in his lifetime. And if, upon a just and equitable settlement and adjustment of such accounts, it shall appear that the estate of the said Robert Williams, in the hands of his administratrix, or of his distributees, is indebted to the estate of the said Joseph, the said administratrix, out of the assets in her hands to be administered, or the several distributees, respectively, according to the portions of the said Robert’s estate which they may have received since his death, ought to satisfy and pay to thq appellant the amount of his just proportion of the said Joseph’s estate, after payment of all his just debts, not exceeding seven thousand five hundred pounds, Virginia currency, the amount of his j udgment against the administratrix ; from which account of the estate of the said Robert Williams, in the hands of his distributees, is to be excluded whatever may have been recovered and received by John Call, as the marriage portion of his wife Lucinda, in the lifetime of the said Robert, or by virtue of the decree of the court of Pittsylvania county, for that account, since his death; liberty being reserved to the plaintiff in the original bill to controvert the validity of such marriage contract, or to show, if. he can, that such decree was obtained by fraud and collusion between the parties to that suit, if necessary for the discharge of his claim against the said Robert’s estate.
4. Property claimed, by a son-in-law, under a marriage contract with a decedent in his lifetime, and recovered, by a decree against the administratrix and distributees, is not in any manner responsible to the creditors of such decedent; unless it appear that stich decree was obtained by fraud and collusion between the parties.
5. If a defendant, called upon to account for sales of certain public securities, deny that lie ever received them; yet ^ver that the proceeds were accounted for to the plaintiff, “as would appear such accounts: by tlie accounts and receipts annexed to his answer,” he ought to produce and receipts, or answer to interrogatories respecting them, if required so to do*
“ This court is further of opinion, that the said Matthew Clay, the defendant in the cross bill, having, by his answer to that bill, so far admitted that he possessed a knowledge of the disposal of the certificates belonging to the estate of the said Robert Williams, in the cross bill charged to have been delivered to him to make sale of, as to have the accounts and receipts respecting the *129 asme in his hands, (which he refers to in his said answer as exhibits, but does not appear to have produced them,) he ought to produce such accounts and receipts, or to answer to interrogatories respecting them, if required so to .do.
.6 7***f le$a‘eg is not entitled t0 3 decree, but on the terms of gisecurity (if th^executor) case*!™»» m "he ^yment debts.
“ And this court, approving of so much of the decree 110 in the cross suit as directs that the appellant shall give rr ° bond to contribute towards the discharge of the testator Joseph Williams’s debts, affirmeth the same j and, reversing so much of both decrees as is not approved of by this decree, the suits are remanded to the said supexior court of chancery to be proceeded in, according to the principles of this decree.”

 1 P. Wms. 751.

 1 H. & M

 Note by tbe Reporter. The circumstances chiefly relied upon, for pie appellant, in support of Ills answer to the cross bill, were, 1. That charge» of fraud and improper conduct were exhibited by liim and Mrs. Williams9 against each other in their respective suits in Granville, (North Carolina,) and Pittsylvania, (Virginia,} which proved that no friendship or confidence existed between them, sufficient to produce any undue influence on the part of Clay; 2. Those suits were reciprocally dismissed upon her giving tlic bond for 7,500/. which, therefore, appears to have been the effect of a compromise ; 3. Her two answers to Clay’s bill in the original suit, did not charge him with obtaining that bond by fraud; 4. That bond is alleged in the cross bill to have been intended for the protection of the estate atltoberé Williams; yet it was given by her as executrix of Joseph Williams; and, 5. The original suit was brought by Clay and wife four years before the burning of her mansion-house and papers; yet she says in the cross bill, that after finding that his bond was burnt, he determined to enforce the judgment against her*
On the other side, it was observed that Clay’s answer was not expressly responsive to one of the most material allegations in the bill; it comes very near, but cautiously avoids, a direct, denial of the allegation, that the sum of 7,500/. was an assumed sum without any real áettlement- He talks about a settlement, but does not assert it. On the contrary, he says the amount of HamiUorfs claim against the estate, (which he avers is the c< only one he ever heard of,”) was not ascertained ; how, then, could there have been a settlement? The answer is a felo de se. It was also contended that if Mrs. Williams was partkeps erhninis in the fraud attempted by Clay, the estate of Joseph Williams (which she only represented as executrix) ought not to he affected by xt<

 1 P.Wms. 751.

) 3 P.Wms. 381